<u>FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                        :
JACK FINLEY,                            :
                                        :
    Plaintiff,                         :  Civil Action No. 06-1838 (SRC)
                                        :
    v.                                  :
                                        :  **OPINION**
DUN & BRADSTREET CORP. and the          :
DUN & BRADSTREET CORP.                  :
RETIREMENT ACCOUNT,                     :
                                        :
    Defendants.                         :
_____:

APPEARANCES:

Jonathan I. Nirenberg, Esq.
RESNICK NIRENBERG & SIEGLER
101 Eisenhower Parkway, Suite 300
Roseland, New Jersey  07068

ATTORNEYS FOR PLAINTIFF JACK FINLEY

Christopher H. Mills, Esq.
FISHER & PHILLIPS, LLP
Corporate Park III
580 Howard Avenue
Somerset, New Jersey  08873

Patrick W. Shea, Esq.
Christine Button, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, Connecticut  06901

ATTORNEYS FOR DEFENDANTS DUN & BRADSTREET CORP.
and the DUN & BRADSTREET CORP. RETIREMENT ACCOUNT

**CHESLER, U.S.D.J.**

This matter comes before the Court on the motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to FED. R. CIV. P. 12(b)(6), by Defendants Dun & Bradstreet Corp. and the Dun & Bradstreet Corp. Retirement Account (collectively, "Defendants" or "D&B"). For the reasons set forth below, the motion will be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This case arises out of disputes over a retirement plan for Dun & Bradstreet employees. According to the Amended Complaint, Plaintiff Jack Finley ("Finley") has been employed by D&B since 1978. Prior to January 1, 1997, D&B provided Finley with a defined benefit retirement plan (referred to as the "Traditional Plan Terms"). As of January 1, 1997, D&B amended the Traditional Plan Terms to convert the plan to a cash balance plan (referred to as the "Cash Balance Terms" or the "Plan"). On September 7, 2005, Finley filed a Complaint in the United States District Court for the Northern District of Illinois, alleging various ways that, in amending the Traditional Plan Terms, D&B violated ERISA. On March 30, 2006, on motion, that court transferred the case to this district. An Amended Complaint was filed on June 5, 2006. Defendants have filed the instant motion to dismiss the Amended Complaint for failure to state a claim.

## ANALYSIS

**I.     Legal Standards**

    A.     Rule 12(b)(6) motion to dismiss

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See Morse v. Lower Merion School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997).  All reasonable inferences, however, must be drawn in the plaintiff's favor.  See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).  Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the

elements exist. See FED. R. CIV. P. 8(a)(2); Conley, 355 U.S. at 45-46. "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

The Supreme Court has characterized dismissal with prejudice as a "harsh remedy." New York v. Hill, 528 U.S. 110, 118 (2000). Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile. "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

**II.     Defendants' Rule 12(b)(6) motion**

    A.     Count One: violation of § 1054(b)(1)(H)

In Count One of the Complaint, Plaintiffs allege that the Plan violates ERISA § 204(b)(1)(H) (29 U.S.C. § 1054(b)(1)(H)) by reducing benefit accrual by reason of age. ERISA pension plan benefit accrual requirements are set forth in 29 U.S.C. § 1054. Plaintiffs invoke provision (i) of subsection (b)(1)(H):

> (i) Notwithstanding the preceding subparagraphs, a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age.

29 U.S.C. § 1054(b)(1)(H).

Plaintiff alleges that, under the Cash Balance Terms of the Plan, younger workers accrue greater benefits than similarly situated older workers:

4

> Under the [] Plan, an older worker with the same rate of pay and years of service, receiving the same dollar amount of contribution to her cash balance account, buys an increasingly smaller annuity with that money because the closer the older worker gets to retirement age, the less time the money contributed has to earn annual interest credits under the Plan.

(Pl.'s Opp. Br. 23.) Thus, when a younger worker and a similarly-situated older worker receive equal contributions to the Plan, the younger worker ends up with a larger benefit at retirement age because time and the principle of compound interest have caused the contribution to grow more. The question for this Court is whether this phenomenon constitutes a reduction in the "rate of an employee's benefit accrual," within the meaning of the statute.

While the Third Circuit has not addressed this matter of statutory interpretation, the Seventh Circuit recently ruled on it in Cooper v. IBM Personal Pension Plan, 457 F.3d 636 (7th Cir. 2006), cert. denied, 75 U.S.L.W. 3368 (2007), holding that this phenomenon does not constitute a reduction in the "rate of an employee's benefit accrual," nor is it age discrimination. Cooper, like this case, involved an age discrimination challenge to a cash balance, defined benefit pension plan under § 1054(b)(1)(H). In an opinion that provides a strikingly clear, concise, and persuasive treatment of the issue, the Seventh Circuit made several important points.

First, the Court observed that the plaintiffs' challenge confused payments into the retirement account with payments out, an approach unsupported by the language of the statute. Id. at 639. The Court explained that the term "benefit accrual," used in 1054(b)(1)(H) but not defined in the statute, must be distinguished from "accrued benefit," which ERISA does define. Id. The term "benefit accrual" refers to what the employer puts into the account, while the term "accrued benefit" refers to what the employee takes out of it. Id.

5

This distinction alone undermines Plaintiff's claim in Count One of this case: § 1054(b)(1)(H) prohibits reduction in benefit accrual which, following Cooper, is the amount that the employer puts in. It does not apply to accrued benefits that an employee takes out. Because Plaintiff complains in Count One that age has a differential effect on what an employee takes out – but not what the employer puts in – he has failed to state a valid claim for violation of § 1054(b)(1)(H).

Second, the Court observed that the phenomenon of which the plaintiffs complained was due to the time value of money, rather than age discrimination, and that "[t]reating the time value of money as a form of discrimination is not sensible." Id. at 639. The problems in this view are highlighted when one considers Plaintiff's recommended remedy: "increasing pay credits with advancing age enough to wipe out the difference in the annuity yields." (Pl.'s Opp. Br. 24.) The idea that older workers should be compensated for the injury of having fewer years until retirement by giving them greater benefits than younger workers – thus discriminating against younger people – is not sensible, and does no more than turn an age-neutral plan into one that affirmatively discriminates.

Third, the Seventh Circuit cautioned that the plaintiff's argument ran afoul of the principles established by the Supreme Court in Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993). Cooper, 457 F.3d at 639. "Here, as so often, it is essential to separate age *discrimination* from other characteristics that may be correlated with age." Id. at 642. Again, this is right on point in the instant case: Plaintiff has failed to distinguish age discrimination from a characteristic correlated with age, the time value of money. The principle of compound interest and the passage of time produce the age differences that Plaintiff complains of, but

6

these are things that are correlated with age; they are not effects of age discrimination.

Plaintiff asks this Court to reject Cooper and, instead, follow district court decisions such as the one reversed by the Seventh Circuit in Cooper or Richards v. FleetBoston Fin. Corp., 427 F. Supp. 2d 150 (D. Conn. 2006).[1]  Taking the position opposite to the Seventh Circuit in Cooper, the Richards court held that "rate of benefit accrual," as used in § 1054(b)(1)(H), means exactly the same thing as "rate of accrued benefit," as defined elsewhere in ERISA.[2]  Id. at 164.  This position is problematic on several grounds.  First and most obviously, ERISA does not define the phrase "*rate of* accrued benefit;" only "accrued benefit" is defined by 29 U.S.C. § 1002(23).

Second, and more importantly, close inspection of the Richards court's equation reveals that it made a mistake identical to the one caught by the Seventh Circuit in Cooper.  "Accrual" and "accrued" are not equivalents: "accrual" is "the action or process of accruing," while "accrued" is the past participle of the verb "accrue," which means "to come by way of increase or addition: arise as a growth or result." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 13 (1993).  Thus, a benefit which is accrued is the result of a process of increase that has already occurred, while the accrual of a benefit occurs in the present during the process of accruing.  Finding "benefit accrual" to be the same as "accrued benefit" is tantamount to equating a past process with the present result of it.  It violates both language and logic.  As the

---

[1] A number of district courts in the Second Circuit have addressed the question of the meaning of "rate of benefit accrual," and the decisions are split.  See In re Citigroup Pension Plan ERISA Litig., 2006 U.S. Dist. LEXIS 89565, *28 (S.D.N.Y. 2006).

[2] The basis for the court's equation is not articulated: it states without explanation that the phrases are "grammatically" equivalent.  Id.  As will be discussed, a noun and a past participle of a verb are not grammatically equivalent.

Seventh Circuit pointed out, it is a mistake to confuse the two; they are different.  Cooper, 457 F.3d at 639.

This Court agrees with the Richards court on the "presumption that Congress 'says in a statute what it means and means in a statute what it says there.'"  Richards, 427 F. Supp. 2d at 165-66 (quoting BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183 (2004)).  Yet following that presumption leads this Court to a very different conclusion: Congress used different phrases in 29 U.S.C. § 1002(23) and § 1054(b)(1)(H), rather than the same phrase, and thus "benefit accrual" and "accrued benefit" should be understood to mean different things.

Plaintiff points to the decisions of district courts which state that the "plain meaning" of "rate of benefit accrual" is the payment out at the end, not the rate of payment in.  See, e.g., In re J.P. Morgan Chase Cash Balance Litig., 2006 U.S. Dist. LEXIS 79145, *19 (S.D.N.Y. 2006) ("plain meaning"); In re Citigroup Pension Plan ERISA Litig., 2006 U.S. Dist. LEXIS 89565, *48 (S.D.N.Y. 2006) ("simple fact").  The fact that district courts are split demonstrates that the meaning is not plain.  See Eaton v. Onan Corp., 117 F. Supp. 2d 812, 830 (D. Ind. 2000) ("The concept of the 'benefit accrual rate' does not have a single, self-evident meaning, especially in the complex world of pension plan regulation").

Moreover, the Morgan court based its position on yet another mistaken analysis of language.  The court quoted this definition of "accrual" from the 1999 edition of Merriam-Webster's Collegiate Dictionary: "To accumulate or be added periodically."  Morgan, 2006 U.S. Dist. LEXIS 79145 at *19.  Yet it is obvious that a mistake has been made, as this is a definition of the verb "to accrue," not the noun "accrual."  According to Merriam-Webster's

Online Dictionary,[3] the definition of "accrual" is: "the action or process of accruing." Thus, while claiming to base its construction on the true dictionary definition of "accrual," the Morgan court took the wrong word from the dictionary.

As suggested above, using the correct dictionary definition leads to an interpretation different from that of the Morgan court. A process is not its result. Accrual is the process of accumulating, not the end result of accumulation. This is consistent with the Seventh Circuit's position that "rate of benefit accrual" refers to the process of putting in, not the result taken out.

Furthermore, this Court concurs with the reasoning of its sister court in Register v. PNC Fin. Servs. Group, Inc., 2005 U.S. Dist. LEXIS 29678, *22-23 (E.D. Pa. 2005):

> Cash balance plans accrue benefits differently than traditional defined benefit plans. Under a traditional defined benefit plan, the benefits are defined in terms of the age 65 annuity. Therefore, it follows logically that the rate of benefit accrual is the change in the accrued benefit. Cash balance plans are not defined in terms of an age 65 annuity, rather they are defined in terms of an account balance that grows with pay credits and interest. Therefore, it follows logically that the rate of benefit accrual is determined by the change in the account balance.

Again, this is consistent with the Seventh Circuit's understanding of the statutory language.

In Count One, Plaintiff complains of age discrimination in benefits taken out of the Plan. In view of this Court's decision that the language of 29 U.S.C. § 1054(b)(1)(H) applies only to amounts paid in, Plaintiffs have failed to state a valid claim for a violation of that provision. This Court perceives no way for Plaintiff to amend Count One so that it could withstand a future motion to dismiss. As to Count One, Defendants' motion to dismiss for failure to state a claim will be granted, and Count One will be dismissed with prejudice.

---

[3] http://www.m-w.com/cgi-bin/dictionary/accrual (last visited January 26, 2007).

In view of this dismissal, this Court need not address Defendants' argument that Count One is barred by New Jersey's two-year statute of limitations.

B.   Arguments based on time: statutes of limitation and laches

Defendants contend that Counts Two, Three, and Four are barred by New Jersey's six-year statute of limitations for tortious injury. Plaintiff agrees that a six-year statute of limitations applies to these claims, but disagrees that the claims accrued in 1997. The parties agree as well that the question of the trigger for the running of the limitations period is governed by Romero v. Allstate Corp., 404 F.3d 212 (3d Cir. 2005).

In Romero, the Third Circuit held:

> The date of accrual of [] ERISA non-fiduciary duty claims asserted is determined as a matter of federal common law. . . [W]hen an ERISA plan is amended but the fact that the amendment actually affects a particular employee or group of employees cannot be known until some later event, the cause of action of the employee will not accrue until such time as the employee knew or should have known that the amendment has brought about a clear repudiation of certain rights that the employee believed he or she had under the plan.

Id. at 221, 223. Thus, a claim accrues on the date of a clear repudiation of the right to certain benefits. As to what constitutes a clear repudiation, Romero provides guidance through its statement of the general rule: "The rule that has developed in the [] ERISA context is that an ERISA non-fiduciary duty claim will accrue after a claim for benefits due under an ERISA plan has been made and formally denied." Id. at 222. See also Henglein v. Colt Indus., 260 F.3d 201, 214 (3d Cir. 2001) (accrual at time of "outright repudiation" of benefits). Moreover, to serve as a basis for dismissal as time-barred, the clear repudiation must appear on the face of the Complaint. Romero, 404 F.3d at 224.

No clear repudiation of benefits appears on the face of the Amended Complaint. Nor do

10

Defendants contend that one does; rather, they base their argument on the contents of documents outside the Amended Complaint. (Defs.' Br. 8-9.) This Court cannot conclude from the Amended Complaint that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. As to their argument that Counts Two, Three, and Four are barred by the statute of limitations, Defendants' motion to dismiss for failure to state a claim will be denied.

Defendants contend as well that Count Five, alleging breach of fiduciary duty, is barred by ERISA's six-year limitation of action:

> No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part . . . after the earlier of (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation . . .

29 U.S.C. § 1113. Plaintiff concurs that this provision sets forth the applicable limitations period, but contends that the "date of last action" provision has operated to prevent the running of the six-year period. This has merit. The Amended Complaint alleges that "Dun & Bradstreet officials made the misrepresentations and omissions to Plaintiffs and the Class beginning in October 1997 and have continued to make them to the present day." (Am. Compl. ¶ 45.) Because, on a Rule 12(b)(6) motion, the Court accepts as true all allegations in the Complaint, the date of the last action which constituted a part of the violation is contemporaneous with the filing of the Amended Complaint, and the six-year limitations period cannot have expired. As to the argument that Count Five is barred by the statute of limitations, Defendants' motion to dismiss for failure to state a claim will be denied.

Defendants also argue that all of the claims are barred by the doctrine of laches. Given

11

that this Court has found that it cannot dismiss the claims as barred by the applicable statutes of limitation, it would be extraordinary to find inexcusable delay that justifies the invocation of laches.  See Mantilla v. United States, 302 F.3d 182, 186 (3d Cir. 2002) ("Because [the] claim survives the statute of limitations, the equitable defense of laches is presumptively inapplicable"); United States v. One Toshiba Color TV, 213 F.3d 147, 158 (3d Cir. 2000) ("if a suit is brought within the statutory period, laches would generally be unavailable.")  Furthermore, inexcusable delay would have to be apparent from the face of the Amended Complaint, which this Court does not find.  As to the argument that Counts Two through Five are barred by the doctrine of laches, Defendants' motion to dismiss for failure to state a claim will be denied.

    C.    Count Two: violation of § 1054(b)(1)(B)

In Count Two, Plaintiff alleges the existence of a "wear-away effect," occurring when a participant has years in which he accrues no benefits, followed by years in which he begins again to accrue benefits.  Plaintiff contends that this violates 29 U.S.C. § 1054(b)(1)(B) ("the 133 1/3 % rule"), which states:

> A defined benefit plan satisfies the requirements of this paragraph of a particular plan year if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3 percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year.

The Amended Complaint explains the wear-away effect in ¶¶ 29-33.  In brief, since the change from the Traditional Plan Terms to the Cash Balance Terms, "Finley has not earned any

new retirement benefits in the nine years he has worked under the Cash Balance Terms. This phenomenon is known as the 'wear-away effect.'" (Am. Compl. ¶ 33.)

On its face, the Amended Complaint fails to state a claim for violation of the 133 1/3 % rule. Although Count Two, in ¶ 39, makes the general statement that "the wear away effect causes plan participants, including Finley, to face years where they accrue zero benefits followed by years where they accrue actual benefits," the Amended Complaint makes no supporting factual allegations. The assertion in ¶ 39 is only a conclusory allegation and is insufficient to state a valid claim for relief. For factual support, all that is alleged in ¶ 33 is that Finley has had years of accruing zero benefits. There is no assertion that Finley had a subsequent year of receiving a non-zero benefit. The Amended Complaint thus makes no particularized allegation of a violation of the 133 1/3 % rule. Nor does the Amended Complaint make clear that a violation of the 133 1/3 % rule – through a year of non-zero benefit accruals – is imminent. "To state a claim, the complaint must allege *facts* supporting a finding of [injury]." County Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 171 (3d Cir. 2006). The Amended Complaint fails to allege sufficient facts to support a finding of a violation of the 133 1/3 % rule. Even without more, this reason alone justifies granting Defendants' motion to dismiss Count Two, and dismissing Count Two without prejudice.

Further analysis of Count Two, however, reveals a defect that cannot be remedied by repleading: even if Plaintiff alleged that his years of zero benefit accrual were followed by non-zero benefit accrual, the wear-away effect would not and could not violate the 133 1/3 % rule. Plaintiff's concept of the wear-away effect is undermined specifically by § 1054(b)(1)(B)(i), which provides that "any amendment to the plan which is in effect for the current year shall be

13

treated as in effect for all other plan years." In defining the wear-away effect, Plaintiff applies the 133 1/3 % rule to a hybrid model that does not comport with this provision. Section 1054(b)(1)(B)(i) requires that, in applying the 133 1/3 % rule, one must look only at the provisions in force during the current year and apply them as if they had been in effect for all other plan years. This precludes the use of hybrid models in which the benefit accruals are calculated by reference to calculations made under a previous plan. To show that the accruals under the Cash Balance Terms violate § 1054(b)(1)(B), Plaintiff must calculate the entire accrual history as if the Cash Balance Terms had been in effect for every year, and thus that the Traditional Plan Terms had never been in effect, as required by § 1054(b)(1)(B)(i).

In alleging the wear-away effect, Plaintiffs have overlooked this. In ¶ 33, Plaintiff defines the wear-away effect as involving the benefits accrued under the Cash Balance Terms. In ¶ 32, Plaintiff alleges that the accrued benefit under the Cash Balance Terms is calculated using a "greater of" formula, which "uses the benefits previously accrued under the Traditional Plan Terms to calculate the new benefit accruals under the Cash Balance Terms." This definition expressly makes use of a hybrid model: it calculates benefits using a mix of the old plan and the new plan. Such a calculation cannot violate the 133 1/3 % rule, since § 1054(b)(1)(B)(i) requires that the rule is applied to an annual accrual under the Cash Balance Plan *as if* the Cash Balance Plan had been in effect for all years and there had never been any Traditional Plan Terms. Thus, any effect on benefits due to the interaction between the Traditional Plan Terms and the Cash Balance Terms cannot show a violation of 29 U.S.C. §

1054(b)(1)(B) by the Cash Balance Plan.[4]  Count Two thus fails to state a valid claim for relief.

Given the analysis stated above, amendment is futile.  As to Count Two, Defendants' motion to dismiss for failure to state a claim will be granted, and Count Two will be dismissed with prejudice.

D.	Counts Three and Four: failure to allege extraordinary circumstances

Counts Three and Four of the Amended Complaint allege violations of ERISA's notice requirements.   In Count III, Plaintiff claims that D&B failed to provide participants with advance notice of the Plan amendment as required by ERISA § 204(h).  In Count IV, Plaintiff contends that D&B failed to provide participants with a summary plan description satisfying ERISA § 102.  Defendants argue that Counts Three and Four fail to state a valid claim for relief because they allege only ordinary notice defects rather than the extraordinary circumstances required to give rise to a substantive remedy.

The Third Circuit holds that "the general rule [is] that plan amendments are valid in spite of inadequate notice." Lettrich v. J. C. Penney Co., 213 F.3d 765, 771 (3d Cir. 2000). Moreover, under ordinary circumstances, the remedy for violations of notice requirements is very limited: "We have repeatedly held that under ordinary circumstances defects in fulfilling

---

[4] See also Allen v. Honeywell Ret. Earnings Plan, 382 F. Supp. 2d 1139, 1160 (D. Ariz. 2005) ("in determining whether a new benefit formula violates the 133 1/3 percent rule, one does not compare the new formula with the old formula; rather, the backloading question must be answered by considering the new formula on a stand-alone basis"); Richards, 427 F. Supp. 2d at 171 ("If the Amended Plan is treated as having been in effect for all plan years, employees such as [plaintiff] would never have accrued a benefit under the Traditional Plan, and would have started accruing benefits under the cash balance formula from the start of their employment"); Richards v. Fleetboston Fin. Corp., 2006 U.S. Dist. LEXIS 55809 (D. Conn. 2006) ("if the court assumes that the Amended Plan has always been in effect, no employees would be subject to the wear-away effect, because all employees would have started their employment when the cash balance plan was already in place").

the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for in section 502(a)(1)(A) of that Act." Ackerman v. Warnaco, Inc., 55 F.3d 117, 124 (3d Cir. 1995). It is only under extraordinary circumstances that other substantive remedies may be available:

> We have, however, recognized the possibility of a remedy where the plaintiff can demonstrate the presence of 'extraordinary circumstances.' Such circumstances include situations where the employer has acted in bad faith, or has actively concealed a change in the benefit plan, and the covered employees have been substantively harmed by virtue of the employer's actions.

Id. (citation omitted). See also Hooven v. Exxon Mobil Corp., 465 F.3d 566, 571 (3d Cir. 2006) (following Ackerman).

Count Three contains no allegations of extraordinary circumstances, nor does it state a claim under ERISA § 502. Under Ackerman, it fails to state a valid claim for relief. As to Count Three, Defendants' motion to dismiss will be granted, and Count Three will be dismissed without prejudice.

Count Four, however, does allege that "Dun & Bradstreet intentionally, recklessly, or negligently took steps that actively concealed material elements of the Cash Balance Terms." (Am. Compl. ¶ 43.) This vague assertion is a conclusory allegation, and Plaintiff has pled no facts to support it. The Complaint makes no factual allegations as a foundation for the claim of active concealment. Because Plaintiff has not pled facts which could support a finding of active concealment, Plaintiff has failed to state a valid claim. County Concrete, 442 F.3d at 171. As to Count Four, Defendants' motion to dismiss will be granted, and Count Four will be dismissed without prejudice.

In view of this dismissal, this Court need not reach Defendants' arguments that Counts

Three and Four should be dismissed because D&B provided legally adequate notice and disclosure.

  E. <u>Count Five: the claim for breach of fiduciary duty</u>

In Count Five, Plaintiff alleges that D&B breached its fiduciary duties under ERISA § 404 by misleading participants and making material misrepresentations and omissions in its communications with them. In support of their motion to dismiss, Defendants contend that Plaintiff has failed to state a valid claim because he has not alleged affirmative misrepresentation. Even if this were correct – which it is not, since this Court is not persuaded that sending out misleading documents could not be affirmative misrepresentation – it is of no significance, because omissions may be actionable as well:

> In our own efforts to develop a federal common law of ERISA rights, we have held that administrators generally have a fiduciary duty not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures. A misleading statement or omission by a fiduciary is actionable if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision.

<u>Harte v. Bethlehem Steel Corp.</u>, 214 F.3d 446, 452 (3d Cir. 2000) (citation omitted). Thus, the key issue is whether there is a substantial likelihood that a communication would mislead a reasonable employee in making an adequately informed retirement decision – not whether it is categorized as an affirmative statement or an omission.[5]

Count Five alleges that D&B breached its fiduciary duties under ERISA by materially misleading plan participants about their retirement plan. Third Circuit law does not require

---

[5] Moreover, the Supreme Court has made clear that fiduciary duties may not be evaded by this type of approach: "any distinction between omissions and misrepresentations is illusory in the context of [one] who has a fiduciary duty . . ." <u>SEC v. Zandford</u>, 535 U.S. 813, 823 (2002).

more to state a valid claim.  As to Count Five, Defendants' motion to dismiss will be denied.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to FED. R. CIV. P. 12(b)(6), is granted in part and denied in part.  As to Counts One and Two, Defendants' motion to dismiss for failure to state a claim is **GRANTED**, and Counts One and Two will be dismissed with prejudice.  As to Counts Three and Four, Defendants' motion to dismiss for failure to state a claim is **GRANTED**, and Counts Three and Four will be dismissed without prejudice.  As to Count Five, Defendants' motion to dismiss for failure to state a claim is **DENIED**.  As to Counts Three and Four, Plaintiff is granted leave to amend the Amended Complaint within 45 days of the filing of this Opinion.


       s/ Stanley R. Chesler  
       Stanley R. Chesler, U.S.D.J.

Dated:  January 26, 2007